# EXHIBIT 1

# AGREEMENT

## BETWEEN
## THE GOVERNMENT OF THE REPUBLIC OF INDIA
## AND
## THE GOVERNMENT OF THE UNITED KINGDOM
## OF GREAT BRITAIN AND NORTHERN IRELAND
## FOR
## THE PROMOTION AND PROTECTION OF INVESTMENTS

The Government of the Republic of India and the Government of the United Kingdom of Great Britain and Northern Ireland (hereinafter referred to as the "Contracting Parties");

Desiring to create conditions favourable for fostering greater investment by investors of one State in the territory of the other State;

Recognising that the encouragement and reciprocal protection under international agreement of such investment will be conducive to the stimulation of individual business initiative and will increase prosperity in both States;

Have agreed as follows:

## ARTICLE 1

## Definitions

For the purposes of this Agreement:

(a) "companies" means:

(i) in respect of the United Kingdom: corporations, firms and associations incorporated or constituted under the law in force in any part of the United Kingdom or in any territory to which this Agreement is extended in accordance with the provisions of Article 13;

(ii) in respect of India: corporations, firms and associations incorporated or constituted under the law in force in any part of India;

(b) "investment" means every kind of asset established or acquired, including changes in the form of such investment, in accordance with the national laws of the Contracting Party in whose territory the investment is made and in particular, though not exclusively, includes:

(i) movable and immovable property as well as other rights such as mortgages, liens or pledges;

(ii) shares in and stock and debentures of a company and any other similar forms of interest in a company;

(iii) rightful claims to money or to any performance under contract having a financial value;

(iv) intellectual property rights, goodwill, technical processes and know-how in accordance with the relevant laws of the respective Contracting Party;

(v) business concessions conferred by law or under contract, including concessions to search for and extract oil and other minerals;

(c) "investors" means any national or company of a Contracting Party;

(d) "nationals" means:

(i) in respect of the United Kingdom: physical persons deriving their status as United Kingdom nationals from the law in force in the United Kingdom;

(ii) in respect of India: persons deriving their status as Indian nationals from the law in force in India;

(e) "returns" means the monetary amounts yielded by an investment such as profit, interest, capital gains, dividends, royalties and fees;

(f) "territory" means:

(i) in respect of the United Kingdom: Great Britain and Northern Ireland, including the territorial sea and any maritime area situated beyond the territorial sea of the United Kingdom which has been or might in the future be designated under the national law of the United Kingdom in accordance with international law as an area within which the United Kingdom may exercise rights with regard to the sea-bed and subsoil and the natural resources and any territory to which this Agreement is extended in accordance with the provisions of Article 13;

(ii) in respect of India: the territory of the Republic of India including its territorial waters and the airspace above it and other maritime zones including the Exclusive Economic

Zone and continental shelf over which the Republic of India has sovereignty, sovereign rights or jurisdiction in accordance with its laws in force, and Public International Law including the 1982 United Nations Convention on the Law of the Sea.

## ARTICLE 2

### Scope of the Agreement

This Agreement shall apply to all investments made by investors of either Contracting Party in the territory of the other Contracting Party, whether made before or after the coming into force of this Agreement.

## ARTICLE 3

### Promotion and Protection of Investment

(1)  Each Contracting Party shall encourage and create favourable conditions for investors of the other Contracting Party to make investments in its territory, and admit such investments in accordance with its laws and policy.

(2)  Investments of investors of each Contracting Party shall at all times be accorded fair and equitable treatment and shall enjoy full protection and security in the territory of the other Contracting Party.

(3)  Each Contracting Party shall observe any obligation it may have entered into with regard to investments of investors of the other Contracting Party, provided that dispute resolution under Article 9 of this Agreement shall only be applicable to this paragraph in the absence of a normal local judicial remedy being available.

## ARTICLE 4

### National Treatment and Most-favoured-nation Treatment

(1) Each Contracting Party shall accord to investments of investors of the other Contracting Party, including their operation, management, maintenance, use, enjoyment or disposal by such investors, treatment which shall not be less favourable than that accorded either to investments of its own investors or to investments of investors of any third State.

(2) In addition each Contracting Party shall accord to investors of the other Contracting Party, including in respect of returns on their investments, treatment which shall not be less favourable than that accorded to investors of any third State.

(3) The provisions of this Agreement relative to the grant of treatment not less favourable than that accorded to the investors of either Contracting Party or of any third State shall not be construed so as to oblige one Contracting Party to extend to the investors of the other the benefit of any treatment, preference or privilege resulting from:

(a) any existing or future customs union or similar international agreement to which either of the Contracting Parties is or may become a party, or

(b) any international agreement or arrangement relating wholly or mainly to taxation or any domestic legislation relating wholly or mainly to taxation.

## ARTICLE 5

### Expropriation

(1) Investments of investors of either Contracting Party shall not be nationalised, expropriated or subjected to measures having effect equivalent to nationalisation or expropriation (hereinafter referred to as "expropriation") in the territory of the other Contracting Party except for a public purpose related to the internal requirements for regulating economic activity on a non-discriminatory basis and against fair and equitable compensation. Such compensation shall amount to the genuine value of the investment expropriated immediately before the expropriation or before the impending expropriation became public knowledge, whichever is the earlier, shall include interest at a fair and equitable rate until the date of payment, shall be made without unreasonable delay, be effectively realizable and be freely transferable.

(2) The investor affected shall have a right, under the law of the Contracting Party making the expropriation, to review, by a judicial or other independent authority of that Party, of his or its case and of the valuation of his or its investment in accordance with the principles set out in this paragraph. The Contracting Party making the expropriation shall make every endeavour to ensure that such review is carried out promptly.

(3) Where a Contracting Party expropriates the assets of a company which is incorporated or constituted under the law in force in any part of its own territory, and in which investors of the other Contracting Party own shares, it shall ensure that the provisions of paragraph (1) of this Article are applied to the extent necessary to guarantee prompt, adequate and effective compensation in respect of their investment to such investors of the other Contracting Party who are owners of those shares.

## ARTICLE 6

### Compensation for Losses

(1) Investors of one Contracting Party whose investments in the territory of the other Contracting Party suffer losses owing to war or other armed conflict, a state of national emergency or civil disturbances in the territory of the latter Contracting Party shall be accorded by the latter Contracting Party treatment, as regards restitution, indemnification, compensation or other settlement, no less favourable than that which the latter Contracting Party accords to its own investors or to investors of any third State. Resulting payments shall be freely transferable.

(2) Without prejudice to paragraph (1) of this Article, investors of one Contracting Party who in any of the situations referred to in that paragraph suffer losses in the territory of the other Contracting Party resulting from:

(a) requisitioning of their property by its forces or authorities, or

(b) destruction of their property by its forces or authorities, which was not caused in combat action or was not required by the necessity of the situation,

shall be accorded restitution or adequate compensation. Resulting payments shall be freely transferable.

## ARTICLE 7

### Repatriation of Investment and Returns

Each Contracting Party shall in respect of investments grant to investors of the other Contracting Party the unrestricted transfer of their investments and returns. Transfers shall be effected without delay in the convertible currency in which the capital was originally invested or in any other convertible currency agreed by the investor and the Contracting Party concerned. Unless otherwise agreed by the investor transfers shall be made at the rate of exchange applicable on the date of transfer pursuant to the exchange regulations in force.

## ARTICLE 8

### Subrogation

(1) Where one Contracting Party or its designated agency has guaranteed any indemnity against non-commercial risks in respect of an investment by any of its investors in the territory of the other Contracting Party and has made payment to such investors in respect of their claims under this Agreement, the other Contracting Party agrees that the first Contracting Party or its designated agency is entitled by virtue of subrogation to exercise the rights and assert the claims of those investors. The subrogated rights or claims shall not exceed the original rights or claims of such investors.

(2) Any payments received in non-convertible currency by the first Contracting Party in pursuance of the rights and claims acquired shall be freely available to the first Contracting Party for the purpose of meeting any official expenditure incurred in the territory of the other Contracting Party.

## ARTICLE 9

### Settlement of Disputes between an Investor and a Host State

(1) Any dispute between an investor of one Contracting Party and the other Contracting Party in relation to an investment of the former under this Agreement shall, as far as possible, be settled amicably through negotiations between the parties to the dispute.

(2) Any such dispute which has not been amicably settled within a period of six months from written notification of a claim may be submitted to international conciliation under the Conciliation Rules of the United Nations Commission on International Trade Law, if the parties to the dispute so agree.

(3) Where the dispute is not referred to international conciliation, or where it is so referred but conciliation proceedings are terminated other than by the signing of a settlement agreement, the dispute may be referred to arbitration as follows:

(a) if the Contracting Party of the investor and the other Contracting Party are both parties to the Convention on the Settlement of Investment Disputes between States and Nationals of other States, 1965, and the investor consents in writing to submit the dispute to the International Centre for the Settlement of Investment Disputes such a dispute shall be referred to the Centre; or

(b) if both parties to the dispute so agree under the Additional Facility for the Administration of Conciliation, Arbitration and Fact-Finding Proceedings; or

(c)  to an <u>ad hoc</u> arbitral tribunal by either party to the dispute in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law, 1976. In respect of such arbitral proceedings, the following shall apply:

(i)  The Arbitral Tribunal shall consist of three arbitrators. Each party shall select an arbitrator. These two arbitrators shall appoint by mutual agreement a third arbitrator, the Chairman, who shall be a national of a third State. The arbitrators shall be appointed within two months from the date when one of the parties to the dispute informs the other of its intention to submit the dispute to arbitration within the period of the six months mentioned earlier in paragraph (2) of this Article;

(ii)  If the necessary appointments are not made within the period specified in sub-paragraph (b)(i), either party may, in the absence of any other agreement, request the President of the International Court of Justice to make the necessary appointments;

(iii) The arbitral award shall be made in accordance with the provisions of this Agreement;

(iv)  The tribunal shall reach its decision by a majority of votes;

(v)  The decision of the arbitral tribunal shall be final and binding and the parties shall abide by and comply with the terms of its award;

(vi)  The arbitral tribunal shall state the basis of its decision and give reasons upon the request of either party;

(vii) Each party concerned shall bear the cost of its own arbitrator and its representation in the arbitral

proceedings.  The cost of the Chairman in discharging his arbitral function and the remaining costs of the tribunal shall be borne equally by the parties concerned.  The tribunal may, however, in its decision direct that a higher proportion of costs shall be borne by one of the two parties, and this award shall be binding on both parties.

## ARTICLE 10

### Disputes between the Contracting Parties

(1) Disputes between the Contracting Parties concerning the interpretation or application of this Agreement should, if possible, be settled through negotiation.

(2) If a dispute between the Contracting Parties cannot thus be settled within six months from the time the dispute arose, it shall upon the request of either Contracting Party be submitted to an arbitral tribunal.

(3) Such an arbitral tribunal shall be constituted for each individual case in the following way.  Within two months of the receipt of the request for arbitration, each Contracting Party shall appoint one member of the tribunal.  Those two members shall then select a national of a third State who on approval by the two Contracting Parties shall be appointed Chairman of the tribunal.  The Chairman shall be appointed within two months from the date of appointment of the other two members.

(4) If within the periods specified in paragraph (3) of this Article the necessary appointments have not been made, either Contracting Party may, in the absence of any other agreement, invite the President of the International Court of Justice to make any necessary appointments.  If the President is a national of either Contracting Party or if he is otherwise prevented



from discharging the said function, the Vice-President shall be invited to make the necessary appointments. If the Vice-President is a national of either Contracting Party or if he too is prevented from discharging the said function, the Member of the International Court of Justice next in seniority who is not a national of either Contracting Party shall be invited to make the necessary appointments.

(5) The arbitral tribunal shall reach its decision by a majority of votes. Such decision shall be binding on both Contracting Parties. Each Contracting Party shall bear the cost of its own member of the tribunal and of its representation in the arbitral proceedings; the cost of the Chairman and the remaining costs shall be borne in equal parts by the Contracting Parties. The tribunal may, however, in its decision direct that a higher proportion of costs shall be borne by one of the two Contracting Parties, and this award shall be binding on both Contracting Parties. The tribunal shall determine its own procedure.

## ARTICLE 11

### Applicable Laws

(1) Subject to the provisions of this Agreement, all investment shall be governed by the laws in force in the territory of the Contracting Party in which such investments are made.

(2) Notwithstanding paragraph (1) of this Article nothing in this Agreement precludes the host Contracting Party from taking action for the protection of its essential security interests or in circumstances of extreme emergency in accordance with its laws normally and reasonably applied on a non-discriminatory basis.

## ARTICLE 12

### Application of other Rules

If the provisions of law of either Contracting Party or obligations under international law existing at present or established hereafter between the Contracting Parties in addition to the present Agreement contain rules, whether general or specific, entitling investments by investors of the other Contracting Party to a treatment more favourable than is provided for by the present Agreement, such rules shall to the extent that they are more favourable prevail over the present Agreement.

## ARTICLE 13

### Territorial Extension

At the time of ratification of this Agreement, or at any time thereafter, the provisions of this Agreement may be extended to such territories for whose international relations the Government of the United Kingdom are responsible as may be agreed between the Contracting Parties in an Exchange of Notes.

## ARTICLE 14

### Entry into Force

This Agreement shall be subject to ratification and shall enter into force on the date of exchange of Instruments of Ratification.

ARTICLE 15

Duration and Termination

This Agreement shall remain in force for a period of ten years. Thereafter it shall continue in force until the expiration of twelve months from the date on which either Contracting Party shall have given written notice of termination to the other. Provided that in respect of investments made whilst the Agreement is in force, its provisions shall continue in effect with respect to such investments for a period of fifteen years after the date of termination and without prejudice to the application thereafter of the rules of general international law.

ARTICLE 16

There shall be ~~annexed to this Agreement~~ a text of the Agreement in the Hindi language, duly certified by both Governments, which shall be equally authoritative.

In witness whereof the undersigned, duly authorised thereto by their respective Governments, have signed this Agreement.

Done in duplicate at London this Fourteenth day of March 1994.

For the Government
of the Republic
of India:

For the Government of
the United Kingdom of
Great Britain and
Northern Ireland: