# EXHIBIT 97



SCC Online Web Edition, Copyright © 2021
Page 1 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

**Writ Petition No. 875 of 2011**

**Jeetendra Krishna Varma v. Air India Ltd.**

**2019 SCC OnLine Bom 327 : (2019) 2 AIR Bom R 602 : 2019 Lab IC 1623 : 2019 LLR (SN 49) 777 : (2019) 3 CLR 506**

**In the High Court of Bombay**

(BEFORE B.R. GAVAI AND N.J. JAMADAR, JJ.)

Writ Petition No. 875 of 2011

Jeetendra Krishna Varma ..... Petitioner;

*v.*

Air India Ltd. and Another ..... Respondents.

With

Writ Petition No. 1427 of 2015

Mayank Mohan Sharma ..... Petitioner;

*v.*

Air India Ltd. and Others ..... Respondents.

Writ Petition No. 875 of 2011 and Writ Petition No. 1427 of 2015

Decided on February 25, 2019, [Reserved On: 4th February 2019]

Advocates who appeared in this case :

Mr. Ashok D. Shetty along with Mr. Swapnil Kamble, Dr. S.N. Jadhav, Advocates for Petitioner in WP/1427/2015.

Mr. Mohan Bir Singh along with Mr. Rahul Jalan i/by M/s. MBS & Co., Advocates for Petitioner in WP/875/2011.

Mr. Sudhir Talsania, Senior Counsel along with Mr. Lancy D'souza, Ms. Kavita Anchan, Ms. Deepika Agarwal, Ms. Heena Shaikh i/by M/s. M.V. Kini & Co., Advocates for Respondent No. 1 in both Writ Petitions.

Ms. Neeta Masurkar along with Mr. D.A. Dubey along with Ms. Nieyaati Masurkar, Advocates for Respondent No. 4 in WP/1427/2015.

The Judgment of the Court was delivered by

**N.J. JAMADAR, J.**:— Rule in Writ Petition No. 1427 of 2015. Rule made returnable forthwith. In terms of the order dated 4th September 2017, and with the consent of the parties, heard finally.

**2.** In these petitions, the following common question of law arises for consideration and decision:

*"Whether the Standing Order 17 of the Standing Orders of Air India Limited (AIL) certified under the Industrial Employment (Standing Orders) Act, 1946 is ultra vires the Constitution of India?"*

**3.** Since the Petitioners in both the petitions are the employees of Respondent No. 1, and the services of the Petitioners have been terminated by Respondent No. 1 by taking recourse to the Standing Order 17, though the factual backdrop is distinct, both the petitions were heard simultaneously, and are being disposed of by this common judgment.

**4.** At the outset, we may note the brief facts of each petition as facts would reveal the background in which the aforesaid question crops up for consideration and would also be relevant for, and have a bearing upon, the ultimate orders, which may be passed.

**FACTS IN WRIT PETITION NO. 875 OF 2011:**

**5.** The Petitioner joined the services of Air India as a Co-Pilot in 1991, after initiation as a Trainee Pilot in the year 1989. The Petitioner possesses a Commercial Pilot License (CPL) endorsed by the Director General of Civil Aviation (DGCA). After about 20 years of flying with the Respondent No. 1, the Petitioner applied for and obtained Airline Transport Pilot License (ATPL). As per the requirements, the Petitioner submitted the said ATPL to DGCA for endorsement thereon. Upon consideration of the documents submitted by the Petitioner, DGCA had issued the endorsement on the ATPL of the Petitioner. In March 2011, a controversy arose as it transpired that some of the Pilots in Command were operating flights on the basis of fake ATPL licence. A crime was registered at Crime Branch Police Station, Delhi on 7th March 2011 vide FIR No. 56 OF 2011 for the offences punishable under Section 420, 466, 468, 471 and 120 B of IPC. On 12th March 2011, the Petitioner came to be arrested therein.

**6.** On 12th March 2011, DGCA passed an order suspending the ATPL of the Petitioner, and Petitioner was directed to immediately surrender his ATPL license No. 4355, under Rule 19(5) of the Aircraft Rule, 1937. The order recorded that the scrutiny of the documents submitted by the Petitioner for issue of ATPL had revealed that he had obtained the said licence on the basis of forged documents. The Petitioner came to be suspended by the Respondent No. 1 on 14th March 2011. Vide order dated 25th March 2011, the Petitioner was terminated from service under the Standing Order 17.

**FACTS IN WRIT PETITION NO. 1427 OF 2015:**

**7.** The Petitioner was appointed as a Cabin Crew Member with Respondent No. 1, in Grade VII, in the year 2004. The Petitioner is an active member of All India Cabin Crew Association, a recognized union of employees. The Petitioner has been espousing cause of the employees as well as the larger issue of Flight Safety. The Petitioner has pointed out glaring safety violations which have a direct bearing on the safety of both the aircraft and the passengers (including cabin crew) since the year 2008. The Petitioner asserts that the Respondent Nos. 1 to 3 harboured a grudge against the Petitioner.

**8.** It is the claim of the Petitioner that he was assigned to operate Flight No. AI 966 Jeddah-Hyderabad-Bombay on 30th April 2015. The Commander of the flight refused to provide mandatory 22 hours of uninterrupted rest in the interestof flight safety. The Commander of the said flight, in breach of the Safety Rules, operated the said flight, leaving one door unmanned and also leaving the Petitioner behind in Jeddah. The Petitioner had correspondence with the concerned authorities but to no avail.

**9.** Instead of adhering to the mandatory Safety Rules, regarding uninterrupted rest, despite repeated appeals of the Petitioner, the Respondents falsely alleged that the Petitioner has deliberately refused to operate the flights on 30th April 2015 and two earlier occasions, and proceeded to brazenly terminate the services of the Petitioner in flagrant violation of the principles of natural justice, vide the impugned order dated 4th May 2015 by taking recourse to Standing Order 17.

**10.** At this juncture, it may be appropriate to extract the Standing Order 17, certified under the Industrial Employment (Standing Orders) Act, 1946 (hereinafter referred to as 'the Standing Orders Act'):—

***"17. TERMINATION OF SERVICE:***

*(i) The services of a workmen may be terminated by the Competent Authority, without assigning reasons as under:—*

*(a) of a permanent workman by giving 30 days notice in writing or wages in lieu of notice;*

*(b) of a workman on probation by giving 7 days notice by giving 24 hours notice in writing or wages/stipend in lieu of notice;*



SCC Online Web Edition, Copyright © 2021
Page 3 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

*(c) of a temporary workman including apprentice by giving 24 hours notice in writing or wages/stipend in lieu of notice;*

*(d) of badli or substitute without notice or wages in lieu of notice.*

*(ii) No notice is necessary for terminating the service of a workman employed for a specified period at the end of that period.*

*(iii) No notice is necessary for terminating the services of a casual or part-time workman.*

*(iv) A workman who is absent without permission for a period of ten days or more, will be deemed to have voluntarily abandoned the services of the Company.*

***EXPLANATION:***

*For the purpose of this Standing Order, the work "Wages" shall include all emoluments which would be admissible, if the workman was on privilege leave."*

**11.** We have heard Shri Mohan Bir Singh, the learned counsel for the Petitioner in Writ Petition No. 875 of 2011 and Shri Shetty, the learned counsel for the Petitioner in Writ Petition No. 1427 of 2015, and Shri Talsania, the learned Senior Counsel for the Respondents in both the petitions. In addition, the Petitioners and the Respondents have also tendered the notes of arguments in support of their submissions across the bar.

**12.** At the threshold, it is required to be noted that the challenge to the constitutionality and enforceability of the afore-extracted Standing Order 17 was two fold: (i) in view of the order passed by Shri A.K. Agrawal, Certifying Officer and Regional Labour Commissioner (Central Mumbai) on 11th March 2008, the certified standing orders themselves ceased to exist; and (ii) since the Standing Order 17, invoked by Respondent No. 1, are *pari materia* with the erstwhile Regulation 48 of the Air India Employees Service Regulations, which was struck down as unconstitutional by the Supreme Court in the case of *Manohar P. Kharkar* v. *P. Raghuraj*[1], the Standing Order 17 also met the same fate and are unconstitutional.

**13.** As regards the first challenge, Shri Shetty, the learned counsel for the Petitioner endavoured to rely upon the order passed by the Certifying Officer and Regional Labour Commissioner, on 11th March 2008, wherein it was observed that the Certified Standing Orders of erstwhile Air India Limited are no more alive and in existence after 27th August 2007. The basis of the said observation was that M/s. NACIL, the precursor of the Respondent No. 1, was an unified establishment, i.e., erstwhile Air India Limited and erstwhile Indian Airlines Limited have not retained their legal entity, and consequent upon such amalgamation of two establishments, the certified Standing Orders of the establishment of the erstwhile Air India Limited cannot be made applicable to the workmen of the new establishment, i.e., M/s. NACIL (as an unified establishment).

**14.** In this context, it was brought to our notice that in *Indian Airlines* v. *Union of India*[2], on 11th December 2006, *inter-alia*, the following order was passed by the Supreme Court:—

"*....One of the question which would arise for consideration in this case is as to whether in* Air India *v.* Union of India, *[(1995) 4 SCC 734], it has correctly been decided that Air India Employees Service Regulations framed under the Air Corporation Act, 1953, would not survive after the enactment of Air Corporations (Transfer of Undertakings and Repeal) Act, 1994. Let the matter be referred to a larger Bench.*"

**15.** Though, the learned counsels for the Petitioners endeavoured to initially urge that the said reference does not involve the question which arises for consideration, i.e., the continued applicability of Certified Standing Orders in question, later on, the

SCC Online Web Edition, Copyright © 2021
Page 4 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

learned counsels for the Petitioners submitted that they would not agitate the question of the Certified Standing Orders not being in operation and would restrict their challenge to the constitutionality of Standing Order 17, as it stands. Thus, we have not delved into the first count of challenge, i.e., the Certified Standing Orders of Respondent No. 1 (of which Standing Order 17 forms part) have ceased to exist.

**16.** With this clarity, we proceed to deal with the challenge to the constitutionality of the afore-extracted Standing Order 17. It was urged by Shri Shetty that the very existence of Standing Order 17, in the Certified Standing Orders, is untenable and an affront upon the constitutional guarantee of right to livelihood and the principles of natural justice and fair procedure. It was submitted that the Standing Order 17 is a relic of the much abused policy of "hire and fire". Despite the pronouncement of the Supreme Court in the case of *Manohar P. Kharkar* v. *P. Raghuraj* (Supra), wherein the Regulation 48 of the Air India Employees Service Regulations was struck down as being ultra vires the Constitution, which was identical with the Standing Order 17, the Respondent No. 1 invoked Standing Order 17 with impunity. It was further urged that the Supreme Court in the case of *Central Inland Water Transport Corporation Limited* v. *Brojonath Ganguly*[3] and *Delhi Transport Corporation* v. *D.T.C. Mazdoor Congress*[4] has aptly termed such unfettered power of termination akin to "HENRY VIII" clause, as it confers absolute arbitrary and unguided power upon the employer. Shri Shetty further urged that there is a long line of decisions wherein it has been categorically held that the principles of natural justice are required to be read in the Regulations and Standing Orders so as to bring them in conformity with constitutional ethos of fairness and non-arbitrariness.

**17.** Shri Mohan Bir Singh, the learned counsel, in Writ Petition No. 875 of 2011, reiterated the aforesaid submissions with an added emotive and persuasive appeal. Taking us through the development of law, with the advent of the Constitution, the learned counsel urged that the Standing Order 17 can in no circumstance co-exist with the constitutional guarantee of equality under Article 14 and/or a right of livelihood under Article 21. Banking upon the aforesaid pronouncements, it was submitted that the recourse to Standing Order 17 by the Respondent No. 1, which is a State Enterprise, manifests nothing but an audacity of indifference.

**18.** Per contra, Shri Talsania, the learned Senior Counsel for the Respondents, urged with tenacity that the aforesaid submissions on behalf of the Petitioner are based on an incorrect impression about the nature of the Certified Standing Orders. According to the learned Senior Counsel, the Certified Standing Orders stand on a totally different footing. Emphasis was laid on the fact that in Standing Orders Act, 1946, an elaborate mechanism is provided for certification of the standing orders. It envisages a tripartite exercise, i.e., the employer, the employee and certification by the Certifying Officer under Section 5(2) of the Standing Orders Act, 1946. Even a provision of appeal is made under Section 6 of the said Act. The learned Senior Counsel would thus urge that the Certified Standing Orders are nothing but statutory conditions of service. Once the standing orders are certified, after following the due procedure prescribed under the Standing Orders Act, 1946, they are binding upon the employer as well as the employees. Thus, the submission on behalf of the Petitioners based on the analogy of Regulation 48 is misconceived, submitted the learned Senior Counsel for the Respondents.

**19.** Before adverting to the deal with the aforesaid submissions, it may be apposite to note that, the original Regulation 48 of Air India Employees Service Regulation was almost identical with sub-clause (a) to (c) of Clause (i) of Standing Order 17. The said regulation came to be amended, after the Apex Court declared the aforesaid regulation void, in the case of *Manohar P. Kharkar* v. *P. Raghuraj* (Supra), to incorporate certain safeguards in the matter of termination of a permanent employee without assigning any reason and without prior notice.



SCC Online Web Edition, Copyright © 2021
Page 5 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

**20.** In the case of *Central Inland Water Transport Corporation Limited* v. *Brojonath Ganguly* (Supra), the constitutionality of clause (i) of Rule 9 of the Service, Discipline and Appeal Rules, 1979 of the Central Inland Water Transport Corporation Limited was under consideration of the Supreme Court. The said Rule 9 read as under:—

***"9. TERMINATION OF EMPLOYMENT FOR ACTS OTHER THAN MISDEMEANOUR-***

*(i) The employment of a permanent employee shall be subject to termination on three months' notice on either side. The notice shall be in writing on either side. The Company may pay the equivalent of three months' basic pay and dearness allowance, if any, in lieu of notice or may deduct a like amount when the employee has failed to give due notice.*

*(ii) The services of a permanent employee can be terminated on the grounds of "Services no longer 1 required in the interest of the Company" without assigning any reason. A permanent employee whose services are terminated under this clause shall be paid 15 days' basic pay and dearness allowance for each completed year of continuous service in the Company as compensation. In addition he will be entitled to encasement of leave at his credit."*

**21.** The Supreme Court, after testing the validity of the aforesaid rule, (which gave an unbridled power to the Government Corporation to terminate services of its permanent employee by giving notice or pay in lieu of the notice period), on the anvil of Article 14 and also the Directive Principles contained in Article 39(a) and 48 of the Constitution, observed that:

*"98. Rule 9(i) confers upon the Corporation the power to terminate the service of a permanent employee by giving him three months' notice in writing or in lieu thereof to pay him the equivalent of three months' basic pay and dearness allowance. A similar regulation framed by the West Bengal State Electricity Board was described by this Court in* West Bengal State Electricity Board *v.* Des Husband Gosh *(at page 118) as ".... a naked 'hire and fire' rule, the time for banishing which altogether from employer-employee relationship is fast approaching. Its only parallel is to be found in the Henry VIII clause so familiar to administrative lawyers.".........*

*99 No apter description of Rule 9(i) can be given than to call it "the Henry VIII Clause". It confers absolute and arbitrary power upon the Corporation...............*

..................

*111........................The action of an instrumentality or agency of the State, if it frames a service rule such as clause (a) of Rule 9 or a rule analogous thereto would, therefore, not only be violative of Article 14 but would also be contrary to the Directive Principles of State Policy contained in clause (a) of Article 39 and in Article 41.*

....

*113 In the result, both these Appeals fail and are dismissed but the order passed by the Calcutta High Court is modified by substituting for the declaration given by it a declaration that clause (i) of Rule 9 of the "Service, Discipline & Appeal Rules - 1979" of the Central Inland Water Transport Corporation Limited is void under section 23 of the Indian Contract Act, 1872, as being opposed to public policy and is also ultra rives Article 14 of the Constitution to the extent that it confers upon the Corporation the right to terminate the employment of a permanent employee by giving him three months' notice in writing or by paying him the equivalent of three months' basic pay and dearness allowance in lieu of such notice."*

(emphasis supplied)

**22.** It is interesting to note that in the said case, the Supreme Court referred to a





Division Bench judgment of this Court in case of *Manohar P. Kharkar* v. *P. Raghuraj*[5], wherein the Division Bench had upheld the validity of Regulation 48 of the Air India Employees Regulations. The Supreme Court observed that in the backdrop of the principles of public policy which the Court evolved, and tested by the principles which the Court formulated, the validity of Regulation 48(a) could never have been sustained, by the Division Bench of the High Court.

**23.** In the case of *O.P. Bhandari* v. *Indian Tourism Development Corporation Limited*[6], the constitutionality of an identical rule conferring power of termination upon an instrumentality of State arose for consideration. In paragraph 4 of the said report, the Supreme Court, after quoting Rule 31(v) of Indian Tourism Development Corporation Ltd., Conduct, Discipline and Appeal Rules, 1978 (ITDC Rules), tersely observed as under:

> *"4. This rule cannot co-exist with Articles 14 and 16(1) of the Constitution of India. The said rule must therefore die, so that the fundamental rights guaranteed by the aforesaid constitutional provisions remain alive. For, otherwise, the guarantee enshrined in articles 14 and 16 of the constitution can be set at naught simply by framing a rule authorizing termination of an employee by merely giving a notice."*

(emphasis supplied)

**24.** The constitutionality of such a rule conferring absolute discretionary power upon a public enterprise to terminate the services of an employee again came up for consideration before a Constitution Bench of the Supreme Court in the case of *Delhi Transport Corporation* v. *D.T.C. Mazdoor Congress* (Supra). As per the majority view, the pivotal question which arose for consideration was, "whether Regulation 9(b) of the Regulations framed under Section 53 of the Delhi Road Transport Act, 1950 which provides for termination of services of permanent employees on giving simply one month's notice or pay in lieu thereof without recording any reason therefor in the order of termination is arbitrary, illegal, discriminatory and violative of *Audi alteram partem* Rule and so constitutionally invalid and void?"

**25.** The Supreme Court took a survey of the authorities on this issue. The Supreme Court, thereafter, answered the aforesaid question, in paragraph 199, as under:—

> *"199. Thus on a conspectus of the catena of cases decided by this Court the only conclusion follows is that Regulation 9(b) which confers powers on the authority to terminate the services of a permanent and confirmed employee by issuing a notice terminating the services or by making payment in lieu of notice without assigning any reasons in the order and without giving any opportunity of hearing to the employee before passing the impugned order is wholly arbitrary, uncanalised and unrestricted violating principles of natural justice as well as Article 14 of the Constitution.*
>
> ........................
>
> *Such Government Company or Public Corporation being State 'instrumentalities are State within the meaning of Article 12 of the Constitution and as such they are subject to the observance of fundamental rights embodied in Part III as well as to conform to the directive principles in Part IV of the Constitution. In other words the Service Regulations or Rules framed by them are to be tested by the touchstone of Articles 14 of Constitution. Furthermore, the procedure prescribed by their Rules or Regulations must be reasonable, fair and just and not arbitrary, fanciful and unjust.*
>
> ........
>
> *Regulation 9(b) does not expressly exclude the application of the 'Audi alteram partem' rule and as such the order of termination of service of a permanent employee cannot be passed by simply issuing a month's notice under Regulation 9 (b) or pay in lieu thereof without recording any reason in the order and without*


SCC Online Web Edition, Copyright © 2021
Page 7 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

*giving any hearing to the employee to controvert the allegation on the basis of which the purported order is made."*

(emphasis supplied)

**26.** Though the judgment of the Supreme Court in *Delhi Transport Corporation* (Supra) particularly dealt with the constitutionality of Regulation 9(b), yet the general and broad question which arose for consideration of the Supreme Court was, whether the absolute power given to the Management of the public undertakings under their respective rules/regulations to terminate the services of an employee without assigning any reason is constitutionally valid. The Supreme Court categorically pronounced the unconstitutionality of such an absolute power as being in infringement of the guaranty of equality under Article 14 and right to livelihood under Article 21 of the Constitution of India and also contrary to the obligation of the State to so regulate its policy as to conform to the Directive Principles in Part IV of the Constitution. Such a power was held to be in breach of the fundamental principles of *Audi alteram partem* Rule, as well.

**27.** In the backdrop of the aforesaid position of law reverting to the facts of the case, it becomes evident that the Standing Order 17 (extracted above), is almost identical with the erstwhile Regulation 48 of the Air India Regulations. There can be no duality of opinion on the point that Standing Order 17 confers absolute arbitrary power upon the competent authority to terminate an employee without assigning any reason whatsoever, by either giving 30 days notice or wages in lieu thereof. Neither an opportunity of hearing is contemplated thereunder. Nor an enquiry is envisaged. It is simply a vestige of the 'hire and fire' policy. It needs no effort to hold that the Standing Order 17 confers unbridled, uncanalized and arbitrary power. If viewed through the prism of the principles of non-arbitrariness, fairness and opportunity of hearing before depriving somebody of the livelihood, Standing Order 17 suffers from the vice of unconstitutionality.

**28.** Shri Talsania, the learned Senior Counsel stoutly submitted that the aforesaid pronouncements do not govern the Certified Standing Orders. An endevour was made to demonstrate that the Certified Standing Orders, under the Standing Orders Act, 1946, by their nature, stand on a different footing than the Rules and Regulations. Amplifying this submission, Shri Talsania drew our attention to the Schedule appended to the Standing Order Act, 1946 wherein the following two distinct entries are provided:—

*"8. Termination of employment, and the notice thereof to be given by employer and workmen.*

*9. Suspension or dismissal for misconduct, and acts or omissions which constitute misconduct."*

**29.** A further attempt was made to salvage the position by making reference to the Standing Order 13 of the Model Standing Orders (Central) and Standing Order 21 of the Maharashtra Model Standing Orders which contain more or less similar provision like the Standing Order 17.

**30.** In the light of the aforesaid submissions the question that arises for consideration is, whether the Standing Orders, on account of their certification and being tripartite in nature, stand on a higher pedestal. Consequently, are the Certified Standing Orders immune from the challenge of unconstitutionality. On the first principles of law, the procedure and manner of certification do not preclude an enquiry to ascertain the constitutionality of the content of the Standing Orders. Yet, for a complete answer to the aforesaid questions, it is necessary to examine the nature and character of the Standing Orders, in law.

**31.** A profitable reference in this context can be made to the three Judge Bench judgment of the Supreme Court in the case of *The Rajasthan State Road Transport*



SCC Online Web Edition, Copyright © 2021
Page 8 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

*Corporation* v. *Krishna Kant*[7], wherein the Supreme Court, after noticing some dissonance in the view in the earlier judgments, enunciated the propositions as under:

(i) The certified Standing Orders are not in the nature of delegated/subordinate legislation;

(ii) The Act does not say that on such certification, the Standing Orders acquire statutory effect or become part of the statute;

(iii) Though the Standing Orders are undoubtedly binding upon both the employer and the employees and constitute the conditions of service of the employees, it appears difficult to say, on principle, that they have statutory force.

(iv) the certified Standing Orders constitute statutory terms and conditions of service.

(v) Lastly, the certified Standing Orders cannot be elevated to the status of Rules. It is one thing to say that they are statutorily imposed conditions of service and an altogether different thing to say that they constitute statutory provisions themselves.

**32.** In view of the aforesaid exposition of law, we are unable to accede to the submission on behalf of the Respondents that the Certified Standing Orders stand on a higher pedestal. Since the Certified Standing Orders do not command the status of delegated legislation, they cannot be elevated to a higher position than that of the rules and regulations framed in exercise of the statutory powers. As the constitutionality of Regulation 48, which was an instance of a delegated legislation, has been struck down, the Standing Order 17 cannot survive. Thus, the endeavour made on behalf of the Respondents to sustain the impugned Standing Order 17, for having been certified under the Standing Orders Act, 1946, falls through.

**33.** Even otherwise, the law has developed to the extent that the principles of natural justice are required to be read even in Certified Standing Orders, wherever they do not provide for adherence to fundamental principles of natural justice.

**34.** A useful reference, in this context can be made to a three Judge Bench judgment of the Supreme Court in the case of *D.K. Yadav* v. *J.M.A. Industries Ltd.*[8], wherein, after referring to the Constitution Bench judgment of the Supreme Court in the case of *Delhi Transport Corporation* (Supra), it was postulated that in Clause 13(2) (iv) of the Standing Orders, which provided for termination for absenteeism, the principles of natural justice must be read. Otherwise, it would become arbitrary, unjust, unfair and violative of Article 14. The principles of natural justice are an integral part of the guarantee of equality assured by Article 14. Any law made or action taken by an employer must be fair, just and reasonable.

**35.** The pronouncement of the Supreme Court in the case of *Uptron India Ltd.* v. *Shammi Bhan*[9] is even more poignant. Paragraphs 15 and 25 put the issue beyond doubt. They read as under:—

"*15. Conferment of 'permanent' status on an employee guarantees security of tenure. It is now well settled that the services of a permanent employee, whether employed by the Government, or Govt. company or Govt. instrumentality or Statutory Corporations or any other "Authority" within the meaning of Article 12, cannot be terminated abruptly and arbitrarily, either by giving him a month's or three months' notice or pay in lieu thereof or even without notice, notwithstanding that there may be a stipulation to that effect either in the contract of service or in the Certified Standing Orders.*

......

*25. In view of the above, we are of the positive opinion that any clause in the Certified Standing Orders providing for automatic termination of service of a permanent employee, not directly related to "production" in a Factory or Industrial*



SCC Online Web Edition, Copyright © 2021
Page 9 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

*Establishment, would be bad if it does not purport to provide an opportunity of hearing to the employee whose services are treated to have come to an end automatically.*"

**36.** In view of the aforesaid development of law, it is too late in the day to urge that a public enterprise can lawfully terminate the services of a permanent employee without giving an opportunity of hearing, much less, without assigning any reason. The action of the Respondent No. 1 in terminating services of the Petitioners by resorting to the power under Standing Order 17 is, therefore, unsustainable in law.

**37.** What consequences emanate from the aforesaid determination? Do the Petitioners deserve reinstatement straightaway? Shri Talsania, the learned senior counsel, urged with tenacity, that the matter does not rest with the declaration of Standing Order 17 as unconstitutional. The Senior counsel submitted that there is an inherent right in an employer to terminate the services of an employee, no matter Standing Order 17 exists or not. The learned Senior Counsel further submitted that there are two fundamental impediments for grant of relief to the Petitioners. Firstly, in view of the pendency of a reference before Central Government Industrial Tribunal, the employer has the opportunity to justify the order of termination under Section 33(2)(b) of the Industrial Disputes Act. It was urged that despite not holding an enquiry, the employer is entitled to justify the termination before the Industrial Tribunal by leading evidence aliendu. Secondly, the facts on record indicate that there is not only an effective alternate remedy available to the Petitioners but the Petitioners have already invoked the said remedy and submitted to the jurisdiction of the Industrial Tribunal, where the approval applications under Section 33(2)(b) of the Industrial Disputes Act are *sub-judice*. In this backdrop, according to the learned Senior Counsel, this Court ought not exercise the extraordinary jurisdiction under Article 226 of the Constitution of India.

**38.** On facts, it was submitted that Shri Jeetendra Krishna Varma, Petitioner in Writ Petition No. 875 of 2011, has filed his written statement in approval application No. 5 of 2011 (In Reference No. 1/4/2006). The said approval application under Section 33(2)(b) of the Industrial Disputes Act was made by Respondent No. 1 simultaneously with the termination. The Petitioner has fully participated in the said proceedings as the cross examination of the witness of the Management by the Petitioner is in progress before the Industrial Tribunal.

**39.** Whereas Shri Mayank Mohan Sharma, the Petitioner in Writ Petition No. 1427 of 2015, has also submitted the written statement to the approval application No. 1/1/2015 filed in pending reference CGIT 1/11 of 2011, on 4th May 2015. In addition to the participation in the approval application, the Petitioner has filed a dispute before the Conciliation Officer on 20th February 2017 under Section 2-A of the Industrial Disputes Act. The Conciliation Officer has issued a certificate on 30th May 2017 to approach the Central Government Industrial Tribunal.

**40.** In the backdrop of the aforesaid facts, Shri Talsania urged with a degree of vehemence that the entire issue is open for consideration before the Industrial Tribunal. As the employer has the right to justify the order of termination before the Industrial Tribunal, in the aforesaid pending proceedings, this Court shall not exercise its plenary jurisdiction, urged the learned Senior Counsel.

**41.** To bolster up the aforesaid submission, Shri Talsania placed a strong reliance upon a judgment of the Supreme Court in the case of *Workmen of Motipur Sugar Factory (Private) Limited* v. *Motipur Sugar Factory*[10], wherein it was held that it was open to the employer to justify the termination before the tribunal even when the said termination was not preceded by an enquiry. The following portions of paragraphs 11 and 12 are relevant and thus extracted:—

"*11. It is now well-settled by a number of decisions of this Court that where an*

SCC Online Web Edition, Copyright © 2021
Page 10 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

*employer has failed to make an enquiry before dismissing or discharging a workman it is open to him to justify the action before the tribunal by leading all relevant evidence before it. In such a case the employer would not have the benefit which he had in cases where domestic inquiries have been held. The entire matter would be open before the tribunal which will have jurisdiction not only to go into the limited questions open to a tribunal where domestic inquiry has been properly held (see* Indian Iron & Steel Co. *v.* Their workmen, *1958 SCR 667 : (AIR 1958 SC 130) but also to satisfy itself on the facts adduced before it by the employer whether the dismissal or discharge was justified.....*"

*............. But in principle we see no difference whether the matter comes before the tribunal for approval under S.33 or on a reference under S.10 of the Industrial Disputes Act, 1947. In either case if the enquiry is defective or if no enquiry has been held as required by Standing Orders, the entire case would be open before the tribunal and the employer would have to justify on facts as well that its order of dismissal or discharge was proper.* Phulbari Tea Estate's Case *(1960) 1 SCR 21 : (AIR 1959 SC 1111) was on: a reference under S.10, and the same principle was applied there also, the only difference being that in that case, there was an inquiry though it was defective. A defective enquiry in our opinion stands on the same footing as no enquiry and in either case the tribunal would have jurisdiction to go into the facts and the employer would have to satisfy the tribunal that on facts the order of dismissal or discharge was proper."*

*12. If it is held that in cases where the employer dismisses his employee without holding an enquiry, the dismissal must be set aside by the industrial tribunal only on that ground, it would inevitably mean that the employer will immediately proceed to hold the enquiry and pass an order dismissing the employee once again. In that case, another industrial dispute would arise and the employer would be entitled to rely upon the enquiry which he had held in the mean-time. This course would mean delay and on the second occasion it will entitle the employer to claim the benefit of the domestic enquiry given. On the other hand, if in such cases the employer is given an opportunity to justify the impugned dismissal on the merits of his case being considered by the tribunal for itself and that clearly would be to the benefit of the employee. That is why this Court has consistently held that if the domestic enquiry is irregular, invalid or improper, the tribunal give an opportunity to the employer to prove his case and in doing so the tribunal tries the merits itself. This view is consistent with the approach which industrial adjudication generally adopts with a view to do justice between the parties without relying too much on technical considerations and with the object of avoiding delay in the disposal of industrial disputes. Therefore, we are satisfied that no distinction can be made between cases where the domestic enquiry is invalid and those where no enquiry has in fact been held. We must therefore reject the contention that as there was no enquiry in this case it was not open to the respondent to justify the discharge before the tribunal.*

(emphasis supplied)

**42.** The aforesaid proposition of law was followed by the Supreme Court in the case of *United Bank of India* v. *Tamil Nadu Banks Deposit Collector Union*[11] and by the Division Bench of the Bombay High Court in the case of *Wajidali T. Kadri* v. *D.D. Shah*[12]. In the later decision, the Division Bench held that the contrary view recorded by the learned Single Judges of this Court, in the cases cited before it, was not correct. It was concluded that the employer has a right to justify the action by leading necessary evidence in support of the said action for the first time before the Labour Court.

**43.** Shri Mohan Bir Singh, the learned counsel for the Petitioner joined the issue by

SCC ONLINE
The surest way to legal research!
SCC Online Web Edition, Copyright © 2021
Page 11 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

putting forth a submission that the aforesaid pronouncements do not deal with the action in respect of employment in a public sector undertaking. Thus, once the very source of power, i.e., the Standing Order 17 is nullified, it would be inequitable to relegate the Petitioners to the Industrial Tribunal, before whom the Petitioners were constrained to appear on account of the approval application having been filed by the Respondent No. 1, submitted the learned counsel.

**44.** Before adverting to deal with the aforesaid contentious issue, it may be apposite to consider the second limb of submission of Shri Talsania, based on existence of an alternate efficacious remedy, as both the challenges are intermingled. To bolster up the said submission of alternate remedy, Shri Talsania placed reliance upon the observations of the Supreme Court in the case of *Transport & Dock Workers Union* v. *Mumbai Port Trust*[13]. In the said case, in the context of the challenge based on infringement of right of equality due to change in duty hours of Typist-cum-Computer Clerk from 6½ hours a day to 7½ hours a day, the Supreme Court had observed as under:—

> *"14.* ***In our opinion the writ petition filed by the appellants should have been dismissed by the High Court on the ground of existence of an alternative remedy under the Industrial Disputes Act. It is well settled that writ jurisdiction is discretionary jurisdiction, and the discretion should not ordinarily be exercised if there is an alternative remedy available to the appellant.*** *In this case there was a clear alternative remedy available to the appellant by raising an industrial dispute and hence we fail to understand why the High Court entertained the writ petition. It seems to us that* ***some High Courts by adopting an over liberal approach are unnecessarily adding to their load of arrears instead of observing judicial discipline in following settled legal principles. However, we may also consider the case on merits.****"*

(emphasis supplied)

**45.** In contrast, Shri Shetty and Shri Mohan Bir Singh, the learned counsels for the Petitioners were in unison in submitting that the Respondent No. 1 cannot be heard to urge the point of alternate remedy at this stage of the proceedings. In Writ Petition No. 875 of 2011, rule has already been issued and the petition itself has been directed to be decided by the order of the Supreme Court. In Writ Petition No. 1427 of 2015, this Court had directed that the petition would be taken up for final hearing. In this view of the matter, according to the learned counsels for the Petitioners, the ground of existence of alternate remedy cannot be now pressed into service.

**46.** Even otherwise, it was submitted on behalf of the Petitioners that the existence of an alternate remedy cannot be used as a ground to throw the petitions overboard when there is grave infringement of the fundamental rights and flagrant violation of the principles of natural justice. The high Court would be justified in exercising its writ jurisdiction, when the fundamental rights and principles of natural justice are violated. In support of the aforesaid submission, reliance was placed on behalf of the Petitioners on the judgments of the Supreme Court in the cases of *L.K. Verma* v. *H.M.T. Ltd.*[14]; *A.V. Venkateswaran* v. *R.S. Wadhwani*[15]; *M.P. State Agro Industries Development Corporation* v. *Jahan Khan*[16]; and *Whirlpool Corporation* v. *Registrar of Trade Marks*[17].

**47.** As the legal position as regards the exercise of extraordinary jurisdiction under Article 226 has crystalised to the effect that the availability of an alternative for not exercising the said jurisdiction is a self imposed restraint, rather than a constitutional prescription, and that there are well recognised exceptions to the said principle, we deem it appropriate to extract the observations of the Apex Court in the case of *Whirlpool Corporation* v. *Registrar of Trade Marks, Mumbai* (Supra), wherein the previous pronouncements were considered. The statement of law is to be found in paragraph 15, which reads as under:—

SCC Online Web Edition, Copyright © 2021
Page 12 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

*"15. Under Article 226 of the Constitution, the High Court, having regard to the facts of the case, has a discretion to entertain or not to entertain a writ petition. But the High Court has imposed upon itself certain restrictions one of which is that if an effective and efficacious remedy is available, the High Court would not normally exercise its jurisdiction. But the alternative remedy has been consistently held by this Court not to operate as a bar in at least three contingencies, namely, where the writ petition has been filed for the enforcement of any of the Fundamental Rights or where there has been a violation of the principle of natural justice or where the order or proceedings are wholly without jurisdiction or the vires of an act is challenged. ............"*

(emphasis supplied)

**48.** In the light of the aforesaid submissions and legal position, reverting to the facts of the case, the following situation emerges. With the declaration that the Standing Order 17 is ultra vires the Constitution, the very source of power of termination, expressly resorted to by the Respondent No. 1, becomes non-est. The edifice of the impugned action gets dismantled. Secondly, an inference is inescapable that the fundamental rights of the Petitioner under Articles 14 and 21 were violated. Thirdly, the impugned action also suffers from the vice of being in complete derogation of the principles of natural justice. In this backdrop, the pertinent question which wrenches to the fore is, should the enforcement of the fundamental rights be kept in a state of suspended animation on the premise that the approval proceedings are pending before Central Government Industrial Tribunal?

**49.** In our considered view, the nature and character of Respondent No. 1 assumes determinative significance. Indisputably, the Respondent No. 2 is a public enterprise and falls within the definition of "State" under Article 12 of the Constitution. We are of the view that a State instrumentality cannot be permitted to trammel upon the fundamental rights of its employees and then turn around to claim the benefit of general principle of labour jurisprudence, which permits an employer to justify the termination of the workman without holding an enquiry. If such a course is permitted to be adopted, the constitutional guarantee would become illusory.

**50.** We are, therefore, afraid to countenance the aforesaid submission rested in the pendency of approval applications at the risk of permitting the serious infringement of inviolable rights. At the cost of repetition, we may refer to the proposition of law in the case of *Uptron India Ltd.* (Supra), to the effect that the services of a permanent employee, whether employed by the Government, or Government company or Government instrumentality or Statutory Corporation or any other Authority within the meaning of Article 12, cannot be terminated abruptly and arbitrarily, either by giving him notice of particular period or pay in lieu thereof or even without notice, notwithstanding that there may be a stipulation to that effect either in the contract of service or in the Certified Standing Orders.

**51.** The second facet of the submission, based on alternate remedy, also does not merit acceptance. In view of the indisputable factual position indicating clear and flagrant violation of the fundamental rights and principles of natural justice by an instrumentality of State, we are of the view that refusal to exercise the jurisdiction under Article 226 of the Constitution, may amount to abdicating our duty and responsibility to enforce the fundamental rights of the Petitioners. We also find that the case is covered by the exceptions carved out in the matter of exercise of the jurisdiction in the face of alternate remedy. When a crystal clear case of infringement of fundamental rights and utter disregard to the principles of natural justice is made out, the affected party cannot be relegated to the vicissitudes of litigation before a statutory forum.

**52.** The legal injury such a course of action, if permitted, would inflict is writ large.



SCC Online Web Edition, Copyright © 2021
Page 13 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

An instrumentality of State can simply terminate the services of its permanent employee, without assigning any reason and providing any opportunity of hearing, and would then seek to justify the termination before the statutory forum in the proceedings, with their own attendant costs and delay. Till such determination, the employee would be left in the lurch; his fundamental rights, including the right to livelihood, blatantly violated and yet he is deprived of their enforcement. We cannot accede to the submission which entails such consequences.

**53.** This propels us to the crucial aspect of the reliefs to be granted qua each petition.

**54.** Mr. Talsania, the learned Senior Counsel submitted that the distinction between the position of a workman and non-workman, in the matter of grant of relief, in the event the order of termination is set aside, needs to be kept in view. It was further submitted that in the backdrop of the facts which have emerged, the conduct attributed to the Petitioners is so glaring that the Petitioners do not deserve any relief in the extraordinary jurisdiction.

**55.** As regards Mr. Jitendra Varma (Writ Petition No. 875 of 2011), it was submitted that the Petitioner having indulged in forgery for the purpose of cheating by submitting a fake result card for obtaining ATPL, has forfeited the right to be in public employment. The learned Senior Counsel strenuously urged that the Petitioner having been employed as a pilot, on the strength of such ATPL could have been entrusted with the Command of the aircraft at grave risk to the lives of hundreds of fliers. Thus, the DGCA has suspended the ATPL licence of the Petitioners, vide order dated 12th March, 2011. Consequently, according to the learned Senior Counsel, even the original Commercial Pilot Licence (CPL) also stands revoked. Thus, till the aforesaid order dated 12th March, 2011 passed by DGCA continues to hold the field, the Petitioner cannot be reinstated.

**56.** Per contra, Shri Mohan Bir Singh, the learned Counsel for the Petitioner laid emphasis on the fact that the allegations of forgery and submission of fake result card for obtaining ATPL are far from established. Even a charge-sheet has not yet been filed in the prosecution initiated against the Petitioner, on the said count. Nor there is any finding by competent authority that the Petitioner did forge the document and used the forged document for the said purpose. It was further submitted that the Petitioner has already filed a writ petition assailing aforesaid order of DGCA. It was, therefore, submitted that the Petitioner deserves to be granted relief of reinstatement with continuity of service and full back-wages or adequate compensation, in lieu of reinstatement, computed on the lines of the judgment of the Supreme Court in the case of *O.P. Bhandari* v. *ITDC* (Supra) and *Indian Airlines Ltd.* v. *Prabha D. Kanan*[18].

**57.** We have perused the material on record and given our anxious consideration to the aforesaid submissions so as to modulate the relief to be granted to the Petitioner. Certain facts are rather indubitable. The Petitioner was appointed on 1st November, 1991 as co-pilot (first officer) since the Petitioner had obtained endorsement on the commercial pilot licence. One of the term of appointment was that, it would be on a probation for the period of one year or till such time the Petitioner obtains ATPL, whichever is later. Vide confirmation order dated 14th January, 2008 the Petitioner came to be confirmed as co-pilot (first officer), with effect from 1st November, 1992. Thus, undisputedly, the Petitioner was confirmed as a co-pilot (first officer) without reference to the condition of obtaining ATPL. In this context, the DGCA order, dated 12th March, 2011 sheds light on the action taken pursuant to the registration of FIR against the Petitioner. It reveals that the Petitioner was issued ATPL 4355 on 17th September 2010. The DGCA proceeded to suspend the ATPL licence 4355. It further records that, on the scrutiny of documents, the Director General of Civil Aviation was satisfied that there was sufficient ground to suspend the ATPL of the Petitioner.

**58.** In the aforesaid setting of the matter, it becomes abundantly clear that the ATPL came to be issued after the Petitioner was confirmed as co-pilot (first officer). The gravamen of accusation against the Petitioner is that the Petitioner forged the result card to obtain ATPL. It is nowhere the case of Respondent No. 1 that the CPL was suspended or that there was any fraud or misrepresentation while obtaining the endorsement on CPL. It further appears that Respondent No. 1 endeavours to impress upon the Court that on the basis of the said ATPL the Petitioner could have been placed as a pilot in command after command training. It implies that the Petitioner was yet not entrusted with the command, till the time the impugned order came to be passed.

**59.** We are mindful of the gravity of the allegations. However, the fact remains that as of today they are in the realm of allegations only. A definitive finding that the Petitioner committed forgery and attempted to use the forged result card for obtaining ATPL is yet to be recorded either in the prosecution initiated against the Petitioner or in a domestic enquiry. In the absence of such finding, and the inevitable quashment of the impugned order of termination, the reinstatement of the Petitioner on the post of co-pilot (first officer), on which he was confirmed by the order dated 14th January, 2008, becomes a necessary corollary.

**60.** The hard facts of the case and the time lag of about eight years, however, persuade us to take a holistic view on the aspect of consequential order, including the entitlement to the back-wages. The Petitioner has not rendered service to Respondent No. 1. The impugned order is set aside on the count of being based upon standing order 17, which was found to be *ultra vires*. It is trite law that the reinstatement with full back-wages is not an automatic and invariable consequence of setting aside the order of termination. In the totality of circumstances, in our view, reinstatement with continuity of service in the post of co-pilot (first officer) with 50% of admissible back-wages may be justifiable. We are also of the view that Respondent No. 1 should have the liberty to initiate a disciplinary proceeding against the Petitioner, in accordance with law, for the alleged misconduct, and this order should not preclude Respondent No. 1 from holding such disciplinary proceeding. Nor, any observations herein can be construed as an expression of opinion on the merits of the matter and all the issues would be open for consideration in such disciplinary proceedings, if instituted.

**61.** In respect of Shri Mayank Sharma (Writ Petition No. 1427 of 2015), Shri Talsania would urge that the Petitioner was guilty of persistent and obdurate refusal to operate the flights on the spacious plea that he was not given an uninterpreted rest of 22 hours before operating the flights. It was pointed out that on 30th April, 2015, the Petitioner refused to operate the flight AI 966 from Jeddah to Hyderabad, despite availing a rest for a period of 19 hours. Past instances, occurred on 16th April and 21st April, 2015, were also pressed into service to demonstrate the obstinate attitude of the Petitioner reflecting upon lack of devotion to duty, resulting in huge financial losses to Respondent No. 1 and inconvenience to the fliers. The learned Senior Counsel drew our attention to the guidelines in respect of, "flight duty time and flight time limitation of cabin crew" especially clause 8.3, which envisage rest period twice the flight time or eight hours whichever is greater, in support of the submission that the insistence for 22 hours rest was totally unjustified.

**62.** In opposition to this, Mr. Shetty, sought to urge that the case is covered by Clause 8.2 of the same guidelines, which provides that before a cabin crew is detailed for an international flight his/her rest period since last flight shall not be less than 22 hours. It was further submitted that there have been serious violations of the guidelines on flight duty time and the rest period by Respondent No. 1. The latter has been reprimanded by the Director General of Civil Aviation as well as a judicial note of the lapses on the part of Respondent No. 1 has been taken by this Court in Writ Petition No. 1997 of 2014, wherein even the All India Cabin Crew Association has been

SCC Online Web Edition, Copyright © 2021
Page 15 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

reminded that the crew members are equally guilty if they fail to abide by the policy of flight safety.

**63.** We do not profess to enter into these factual disputes. Nor determine as to which of the sub-clauses of clause 8 of the guidelines govern the situation. However, one fact becomes explicitly clear that the Petitioner was well aware of the departure time of the AI 966 from Jeddah to Hyderabad. The grievance about the non-conformation with the rest period could have been legitimately made without refusing to operate the flight. Thus, the question as to whether the refusal of the Petitioner, in the circumstances of the case, to operate the flight on 30th April, 2015 and on the past occasions, as alleged, was unjustifiable and constituted misconduct is again a matter for proper domestic enquiry. We, therefore, deem it appropriate to give liberty to Respondent No. 1 to initiate and hold a disciplinary proceedings against the Petitioner in accordance with law, while directing his reinstatement in service with continuity of service. In the light of the attendant circumstances and the time lag from the passing of the impugned order, a direction for payment of 50% admissible back-wages would be justifiable.

**64.** For the forgoing reasons, the Writ Petitions deserve to be allowed. The writ petitions are allowed as follows:

(a) It is hereby declared that the standing order No. 17 is *ultra vires.*

(b) **WRIT PETITION NO. 875 OF 2011;**

(i) The impugned order of termination of the service of the Petitioner dated 25th March, 2011 stands quashed and set aside.

(ii) The Petitioner Shri Jitendrakumar Verma stands reinstated in service in the post of co-pilot (first officer) with continuity of service

(iii) Respondent No. 1 shall pay to the Petitioner 50% of the admissible back-wages from the date of the impugned order till the date the Petitioner rejoins the said post in pursuance of this order. The back-wages so computed shall be paid within two months from today.

(iv) Respondent No. 1 is at liberty to initiate and hold disciplinary proceedings against the Petitioner for the alleged misconduct, in accordance with law.

(c) **WRIT PETITION NO. 1427 OF 2015;**

(i) The impugned order of termination of the service of the Petitioner dated 4th May, 2015 stands quashed and set aside.

(ii) The Petitioner Shri Mayank Mohan Sharma stands reinstated in service in the post of cabin crew, in the grade which he was holding on 4th May, 2015, with continuity of service.

(iii) Respondent No. 1 shall pay to the Petitioner 50% of the admissible back-wages from the date of the impugned order till the date the Petitioner rejoins the said post in pursuance of this order. The back-wages so computed shall be paid within two months from today.

(iv) Respondent No. 1 is at liberty to initiate and hold disciplinary proceedings against the Petitioner for the alleged misconduct, in accordance with law.

(d) The disciplinary proceedings against the Petitioners, if instituted, shall be decided on their own merit and all the issues are kept open. The observations hereinabove shall not be treated as an expression of opinion on the merit of the respective cases and shall not bind the disciplinary and/or appellate/revisional authorities.

(e) Rule is made absolute in both the petitions in the aforesaid terms.

(f) In the circumstances, there shall be no order as to costs.

———




SCC Online Web Edition, Copyright © 2021
Page 16 Thursday, February 04, 2021
Printed For: Mr Abhishek Tewari
SCC Online Web Edition: http://www.scconline.com

[1] Civil Appeal No. 19 of 1982

[2] Petition(s) for Special Leave to Appeal (Civil) No.(s). 22330-22331/2005

[3] (1982) 2 Lab. L.J. 459

[4] 1991 Supp (1) SCC 600 : AIR 1991 Supreme Court 101

[5] 1981 (2) LLJ 459 (Bom.)

[6] 1986 II CR 429

[7] (1995) 5 SCC 75 : AIR 1995 Supreme Court 1715

[8] (1993) 3 SCC 259

[9] (1998) 6 SCC 538

[10] AIR 1965 SC 1803

[11] (2008) 1 CLR 1973

[12] (2008) 1 LLJ 790 (BOM.)

[13] 2011 (1) CLR 12

[14] 2006 SC 975

[15] AIR 1961 SC 1506

[16] (2007) 10 SCC 88 : AIR 2007 SC 3153

[17] (1998) 8 SCC 1 : AIR 1999 SC 22

[18] (2006) 11 SCC 67

**Disclaimer:** While every effort is made to avoid any mistake or omission, this casenote/ headnote/ judgment/ act/ rule/ regulation/ circular/ notification is being circulated on the condition and understanding that the publisher would not be liable in any manner by reason of any mistake or omission or for any action taken or omitted to be taken or advice rendered or accepted on the basis of this casenote/ headnote/ judgment/ act/ rule/ regulation/ circular/ notification. All disputes will be subject exclusively to jurisdiction of courts, tribunals and forums at Lucknow only. The authenticity of this text must be verified from the original source.

© EBC Publishing Pvt.Ltd., Lucknow.